IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HERMENEGILDO ESCOBAR-GARFIAS,                06-CV-103-BR

       Plaintiff,                       OPINION AND ORDER

v.

ALBERTO R. GONZALES, U.S.
Attorney General; MICHAEL
CHERTOFF, Secretary of
Department of Homeland
Security (DHS); and WILLIAM
D. MCNAMEE, District Director
of United States Citizenship
and Immigration Services
(USCIS),

       Defendants.


DAVID N. SHOMLOO
222 N.W. Davis, Suite 402
Portland, OR  97209
(503) 220-5045

      Attorney for Plaintiff


1 - OPINION AND ORDER

**KARIN J. IMMERGUT**
United States Attorney
**KENNETH C. BAUMAN**
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902
(503) 727-1025

       Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Defendants' Motion to Supplement the Record (#20), Plaintiff's Motion for Issuance of Writ of Mandamus (#18), and Defendants' Motion to Dismiss (#16).

     For the reasons that follow, the Court **GRANTS** Defendants' Motion to Supplement the Record, **DENIES** Plaintiff's Motion for Issuance of Writ of Mandamus, **GRANTS in part** Defendants' Motion to Dismiss to the extent the Court concludes it does not have the authority to declare that Plaintiff is *prima facie* eligible for naturalization, and **DENIES in part** Defendants' Motion to Dismiss to the extent that Defendant McNamee has jurisdiction to determine Plaintiff's *prima facie* eligibility for naturalization while removal proceedings are pending.


<u>**BACKGROUND**</u>

     Plaintiff Hermenegildo Escobar-Garfias is a citizen of Mexico.  At some time prior to August 3, 1987, Plaintiff illegally entered the United States.  On August 12, 1987,

2 - OPINION AND ORDER

Plaintiff filed an Application for Temporary Resident Status as a Special Agricultural Worker with the Immigration and Naturalization Service (INS).[1]  On February 5, 1988, the INS adjusted Plaintiff's status in the United States to that of a Lawful Temporary Resident Alien.  On December 1, 1990, the INS adjusted Plaintiff's status to that of a Lawful Permanent Resident (LPR).

On October 1, 1991, Plaintiff pled guilty to Contributing to the Sexual Delinquency of a Minor in violation of Oregon Revised Statutes § 163.435 and was sentenced to two years of probation.

On December 11, 2004, Plaintiff traveled to Mexico.  On January 6, 2005, Plaintiff returned to the United States and applied for admission as a returning LPR.  Customs and Border Protection (CBP), a division of the DHS, deferred Plaintiff's inspection until February 3, 2005.

The CBP determined Plaintiff was not admissible to the United States on the basis of his 1991 criminal conviction; denied Plaintiff admission; and referred Plaintiff to the Bureau of Immigration and Customs Enforcement (ICE), the agency within the DHS charged with domestic enforcement of immigration laws.

On February 10, 2005, ICE initiated removal proceedings

---

[1] "[T]he INS ceased to exist as an independent agency and delegate of the Attorney General . . . when its functions, including naturalization, were transferred to the [DHS]." *Bellajaro v. Schiltgen*, 378 F.3d 1042, 1043 n.1 (9th Cir. 2004).

against Plaintiff in Immigration Court on the ground that
Plaintiff was not admissible to the United States under 8 U.S.C.
§ 1227(a)(2)(A)(iii) because he had been convicted of an
aggravated felony relating to sexual abuse of a minor.

On April 18, 2005, Plaintiff filed an Application for
Naturalization with the USCIS, the agency within the DHS charged
with adjudicating immigration "benefits."

On July 7, 2005, and January 19, 2006, Plaintiff filed
motions to terminate removal proceedings in Immigration Court
pursuant to 8 C.F.R. § 1239.2(f).

On July 18, 2005, Defendant William D. McNamee, USCIS
Portland District Director, issued a decision denying Plaintiff's
Application for Naturalization on procedural grounds based on the
"priority provision" of 8 U.S.C. § 1429 as well as *Bellajaro v.
Schiltgen*, 378 F.3d 1042 (9th Cir. 2004), and *Perdomo-Padilla v.
Ashcroft*, 333 F.3d 964, 970 (9th Cir. 2003).

On August 17, 2005, Plaintiff filed a request for a hearing
on the denial of his Application pursuant to 8 U.S.C. § 1447(a)
and 8 C.F.R. § 336.

On September 15, 2005, McNamee issued a decision affirming
his July 18, 2005, denial of Plaintiff's Application and advising
Plaintiff of his right to seek review of the agency's decision by
the district court within 120 days pursuant to 8 U.S.C.
§ 1421(c).

4 - OPINION AND ORDER

On October 21, 2005, Plaintiff filed a second Application for Naturalization.  On December 5, 2005, McNamee denied Plaintiff's second Application, again relying on the priority provision of 8 U.S.C. § 1429 as well as *Bellajaro* and *Perdomo-Padilla*.

On January 4, 2006, Plaintiff's counsel requested the USCIS to issue a letter to the Immigration Court finding Plaintiff *prima facie* eligible for naturalization so the Immigration Court could terminate removal proceedings and the USCIS could consider Plaintiff's Application for Naturalization.

The same day, Plaintiff filed a request for a hearing on the denial of his second Application pursuant to 8 U.S.C. § 1447(a) and 8 C.F.R. § 336.  On January 20, 2006, McNamee denied Plaintiff's request for a finding as to Plaintiff's *prima facie* eligibility for naturalization without a hearing.  McNamee also denied Plaintiff's request for a hearing.

On January 25, 2006, Plaintiff filed a Complaint in this Court seeking relief in mandamus.  Plaintiff seeks (1) a declaration by this Court as to whether Plaintiff is *prima facie* eligible for naturalization or, in the alternative, (2) a declaration that Defendants have jurisdiction to make a determination of Plaintiff's *prima facie* eligibility for naturalization.  If the Court declares Defendants have jurisdiction, Plaintiff requests an order from the Court

5 - OPINION AND ORDER

requiring Defendants to reopen Plaintiff's Application for
Naturalization and to determine Plaintiff's *prima facie*
eligibility.

On July 14, 2006, Immigration Judge Michael Bennett held
Plaintiff was ineligible for relief from removal under 8 U.S.C.
§ 1182(c).

On November 3, 2006, Plaintiff filed a Motion for Issuance
of Writ of Mandamus seeking an order requiring Defendants to make
a decision as to Plaintiff's *prima facie* eligibility for
naturalization within thirty days of the Court's issuance of a
writ of mandamus and order.

On November 7, 2006, Defendants filed a Motion to Dismiss on
the grounds that the Court lacks subject-matter jurisdiction and
that Plaintiff has failed to state a claim.

## STANDARDS

### I.    Subject-Matter Jurisdiction

When deciding a motion to dismiss for lack of subject-matter
jurisdiction under Rule 12(b)(1), the court may consider
affidavits and other evidence supporting or attacking the
plaintiff's jurisdictional allegations.  *Autery v. U.S.*, 424 F.3d
944, 956 (9th Cir. 2005).  The court may permit discovery to
determine whether it has jurisdiction.  *Data Disc, Inc. v. Sys.
Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  The

6 - OPINION AND ORDER

court has broad discretion in granting discovery and may narrowly define the limits of such discovery. *Id.* When the court "receives only written submissions, the plaintiff need only make a *prima facie* showing of jurisdiction." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th Cir. 2002).

The plaintiff has the burden to establish that the court has subject-matter jurisdiction. *Ass'n of Am. Med. Coll. v. U.S.,* 217 F.3d 770 (9th Cir. 2000).

## II. Failure to State a Claim

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "for failure to state a claim is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998).

A court should not dismiss a complaint, thus depriving the plaintiff of an opportunity to establish his or her claims at trial "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

2001)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In addition, if a court dismisses a claim pursuant to Rule 12(b)(6), the court should grant leave to amend unless the court determines the allegation of other facts consistent with the operative pleading could not possibly cure the deficiency.  *Schreiber Distrib. Co. v. Serv-Well Furn. Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  *See also Reddy v. Litton Indus.*, 912 F.2d 291 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991).


### DEFENDANTS' MOTION TO SUPPLEMENT THE RECORD (#20)

Defendants move the Court to make its Opinions and Orders from *Quong Quang Le v. William McNamee*, 06-CV-049-BR, issued October 20, 2006, and January 8, 2007, part of the record in this litigation.  Although it is not necessary for Defendants to file a Motion in order for the Court to consider its own rulings, the Court grants Defendants' Motion and makes its Opinions and Orders from *Le* part of the record in this litigation.


### DEFENDANTS' MOTION TO DISMISS (#16)

Defendants contend this Court does not have jurisdiction to make a determination regarding Plaintiff's eligibility and that Defendants may not determine Plaintiff's *prima facie* eligibility for naturalization as long as removal proceedings are pending against Plaintiff.

8 - OPINION AND ORDER

## I.   Burden of Proof in Naturalization Proceedings

8 U.S.C. § 1427(a) provides in pertinent part:

> No person . . . shall be naturalized unless such
> applicant, (1) immediately preceding the date of
> filing his application for naturalization has
> resided continuously, after being lawfully
> admitted for permanent residence, within the
> United States for at least five years . . . and
> who has resided within the State or within the
> district of the Service in the United States in
> which the applicant filed the application for at
> least three months, (2) has resided continuously
> within the United States from the date of the
> application up to the time of admission to
> citizenship, and (3) during all the periods
> referred to in this subsection has been and still
> is a person of good moral character.

The burden to establish eligibility for naturalization is on the
alien.  *Berenyi v. Dist. Dir., Immigr. and Naturalization*, 385
U.S. 630, 636-67 (1967).  When there is doubt concerning a grant
of United States citizenship, the doubt generally should be
resolved in favor of the United States.  *Id*. at 637.

## II.  History of the Naturalization Process

The Ninth Circuit set forth the background and interaction
of the statutes that govern naturalization and removal in
*Bellajaro*:

> Before 1990, district courts had authority to
> naturalize, while authority to deport (or in
> current terminology, to "remove") aliens was
> vested in the Attorney General.  This differen-
> tiation of function gave rise to a "race between
> the alien to gain citizenship and the Attorney
> General to deport. . . ." *Shomberg v. United
> States*, 348 U.S. 540, 544 (1955).  Section 1429
> was enacted in 1952 to put an end to the race.  It
> provided that "no petition for naturalization

9 - OPINION AND ORDER

shall be finally heard by a naturalization court
if there is pending against the petitioner a
deportation proceeding . . . ." 8 U.S.C. § 1429
(1952).  Then in 1990, Congress decided to vest
all authority to naturalize in the Attorney
General, 8 U.S.C. § 1421(a), and conformed § 1429
by changing "a naturalization court" to "the
Attorney General" so that § 1429 now reads:

> [N]o application for naturalization shall be
> considered by the Attorney General if there
> is pending against the applicant a removal
> proceeding pursuant to a warrant of arrest
> issued . . . :  Provided, that the findings
> of the Attorney General in terminating
> removal proceedings or in canceling the
> removal of an alien pursuant to the
> provisions of this chapter, shall not be
> deemed binding in any way upon the Attorney
> General with respect to the question of
> whether such person has established his
> eligibility for naturalization as required by
> this subchapter.

8 U.S.C. § 1429 (1990).  At the same time that
§ 1421(a) was adopted and § 1429 was amended,
Congress provided for judicial review in
§ 1421(c):

> A person whose application for naturalization
> under this subchapter is denied, after a
> hearing before an immigration officer under
> section 1447(a) of this Title, may seek
> review of such denial before the United
> States district court for the district in
> which such person resides in accordance with
> chapter 7 of Title 5.  Such review shall be
> de novo, and the court shall make its own
> findings of fact and conclusions of law and
> shall, at the request of the petitioner,
> conduct a hearing de novo on the application.

8 U.S.C. § 1421(c).

We have recognized that "[t]he natural reading of
[§ 1429] is that removal proceedings and final
removal orders are to take precedence over
naturalization applications." *Perdomo-Padilla v.*

*Ashcroft*, 333 F.3d 964, 970 (9th Cir. 2003).

378 F.3d at 1045.

**III. This Court Has Jurisdiction to Review the Denial of Plaintiff's Application for Naturalization.**

8 U.S.C. § 1421(c) grants jurisdiction to district courts to review the denial of a naturalization application.  Although Plaintiff does not directly ask the Court to review Defendants' denial of Plaintiff's Application for Naturalization, Plaintiff requests the Court to order Defendants to reopen his Application. Accordingly, the Court will review Defendants' denial of Plaintiff's Application.

**A.    Standard of Review**

8 U.S.C. § 1421(c) provides the Court's review of Defendants' denial of Plaintiff's Application for Naturalization must be *de novo*.

**B.    Review of Denial**

The meaning of § 1429 is clear on its face:  Defendants may not "consider" an application for naturalization if a removal proceeding is pending against the applicant.

Here a removal proceeding was pending against Plaintiff at the time he applied for naturalization.  The Court, therefore, concludes Defendants properly denied Plaintiff's Application for Naturalization.  Moreover, the removal proceeding remains pending, and, therefore, Defendants still may not "consider" the

11 - OPINION AND ORDER

underlying merits of Plaintiff's Application.

Accordingly, the Court declines to order Defendants to reopen Plaintiff's Application for Naturalization.

**IV. This Court Lacks Jurisdiction to Determine Plaintiff's *Prima Facie* Eligibility for Naturalization**.

Plaintiff also asks the Court to determine Plaintiff's *prima facie* eligibility for naturalization.

The Ninth Circuit has held

> [when] the [USCIS] has denied an application for naturalization on the basis of § 1429 because removal proceedings are pending, the district courts have jurisdiction to review the denial but the scope of review is limited to "such" denial.

*Bellajaro*, 378 F.3d at 1046-47 (citing *Zayed v. U.S.*, 368 F.3d 902, 906 (6th Cir. 2004)). "When the administrative denial is based on § 1429, therefore, judicial review is limited to that determination." *Id*. at 1047. In other words, "the scope of review extends only to the determination that was actually made by the agency." *Id*. at 1043. Thus, the Court may not consider the merits of Plaintiff's Application for Naturalization nor determine whether Plaintiff is either entitled to or eligible for naturalization. *Id*. at 1046-47.

Accordingly, pursuant to *Bellajaro*, the Court concludes it lacks jurisdiction under § 1421(c) to declare whether Plaintiff is *prima facie* eligible for naturalization.

**V. Defendants Have Jurisdiction to Make a Decision as to Plaintiff's *Prima Facie* Eligibility for Naturalization.**

Finally, Plaintiff requests the Court to declare Defendants have jurisdiction to determine Plaintiff's *prima facie* eligibility for naturalization and to order Defendants to make such a determination. Plaintiff, in fact, contends 8 C.F.R. § 1239.2(f) and the Board of Immigration Appeals (BIA) decision in *Matter of Cruz*, 15 I&N Dec. 236 (BIA 1975), create a regulatory scheme that requires Defendants to determine Plaintiff's *prima facie* eligibility for naturalization.

Defendants argue they are not authorized to determine whether Plaintiff is *prima facie* eligible for naturalization because they would have to consider Plaintiff's Application for Naturalization to do so and such consideration is prohibited expressly by 8 U.S.C. § 1429 when removal proceedings are pending against the applicant.

A.    **Applicability of *Cruz***

In *Matter of Cruz*, the BIA analyzed 8 C.F.R. § 242.7, the regulation in effect before § 1239.2(f).[2]  The BIA noted neither the BIA nor immigration judges have the ability to make

---

[2] 8 C.F.R. § 242.7 provided in pertinent part:

> [An immigration judge] may, in his discretion, terminate deportation proceedings to permit respondent to proceed to a final hearing on a pending application or petition for naturalization when the respondent has established prima facie eligibility for naturalization and the case involves exceptionally appealing or humanitarian factors.

13 - OPINION AND ORDER

independent determinations of *prima facie* eligibility for
naturalization.  15 I&N Dec. at 237.  The BIA held, however, that
*prima facie* eligibility "may be established by an affirmative
communication from the [INS] or by a declaration of a court that
the alien would be eligible for naturalization but for the
pendency of the deportation process."  *Id.*

        Several courts have questioned whether *Cruz* remains
good law because courts had authority under § 1421(a) to
naturalize aliens at the time the BIA decided *Cruz*, but Congress
removed the courts' power to naturalize aliens and vested that
power exclusively in the Attorney General with the 1990
amendments to § 1421.  *See Bellajaro*, 378 F.3d at 1047 ("We doubt
that *Cruz* remains good law given that courts no longer
naturalize.").  *See also Apokarina v. Ashcroft*, 232 F. Supp. 2d
414, 417 (E.D. Pa. 2002), *aff'd Apokarina v. Ashcroft*, No. 02-
4265, 2004 WL 742286 (3d Cir. Apr. 7, 2004); *Saba-Bakare v.
Ridge*, No. H-04-4588, 2006 WL 1350298 (S.D. Tex. May 16, 2006)
(a "declaration [regarding *prima facie* eligibility] seems purely
advisory for discretion to prosecute and to adjudicate removal
proceedings is reposed exclusively in the Attorney General.").
Even though these courts question whether *Cruz* still governs on
the issue of the courts' authority to determine *prima facie*
eligibility, the Court notes they do not examine whether *Cruz*
governs as to the Attorney General's authority to decide an

14 - OPINION AND ORDER

applicant's *prima facie* eligibility for naturalization when a removal proceeding is pending.  Although this Court agrees it does not have the authority to decide an applicant's *prima facie* eligibility for naturalization after the 1990 amendments to § 1421 and *Bellajaro*, this Court, nevertheless, must determine whether the Attorney General still has that authority pursuant to *Cruz*.

In *Cruz*, the BIA noted its authority to terminate deportation proceedings to permit an alien to proceed with an application for naturalization prior to the promulgation of § 242.7 "was based solely on the broad grant of authority in . . . 8 CFR 3.1(d)(1)."  15 I&N Dec. at 237 (citing *Matter of B--,* 6 I&N Dec. 713 (BIA 1955)(establishes the "inherent authority in the Attorney General to terminate deportation proceedings for the limited purpose of permitting the alien to file a petition for naturalization and to be heard thereon by a naturalization court.").  The BIA further noted there were not any "clear guidelines [prior to the promulgation of § 242.7] with respect to the exercise of this power."  *Id*.  The BIA determined the regulation established "reasonable criteria which [the BIA] shall employ in resolving . . . request[s] for termination of [removal] proceedings."  *Id*.  The BIA then noted neither the BIA nor immigration judges have any authority with respect to naturalization and, therefore, the BIA concluded an alien "may

establish *prima facie* eligibility for naturalization by an affirmative communication from the [INS] or by a declaration of a court that the alien would be eligible for naturalization but for the pendency of the deportation proceedings."  *Id*.

Thus, even though this Court agrees the portion of the *Cruz* decision that held a court could declare an alien is *prima facie* eligible for naturalization is no longer good law in light of § 1429 and *Bellajaro*, the Court, nevertheless, concludes the BIA's decision in *Cruz* with respect to the ability of the INS and, by extension, the USCIS, to determine an alien's *prima facie* eligibility for naturalization remains good law.

**B.    Application of *Cruz* and § 1239.2(f)**

8 C.F.R. § 1239.2(f) provides in pertinent part:

> An immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization when the alien has established prima facie eligibility for naturalization and the matter involves exceptionally appealing or humanitarian factors.

Defendants contend § 1429 prohibits them from considering an application for naturalization while a removal proceeding is pending, and, therefore, they may not determine Plaintiff's *prima facie* eligibility for naturalization because it would require Defendants, in effect, to consider Plaintiff's Application.  Plaintiff, however, argues a determination of *prima*

16 - OPINION AND ORDER

*facie* eligibility by Defendants would not require consideration of Plaintiff's underlying Application.

Although § 1429 clearly prohibits Defendants from considering an application for naturalization, it does not explicitly prohibit Defendants from making a determination of *prima facie* eligibility.  In fact, § 1429 specifically provides

> the findings of the Attorney General in
> terminating removal proceedings . . .
> pursuant to the provisions of this chapter,
> shall not be deemed binding in any way upon
> the Attorney General with respect to the
> question of whether such person has
> established his eligibility for
> naturalization.

Thus, Defendants are not bound to a final decision as to an application for naturalization by their recommendation to the Immigration Judge regarding the applicant's *prima facie* eligibility.  In addition, Defendants have denied Plaintiff's Application for Naturalization on the basis that a removal proceeding is pending.  Thus, if Defendants determined Plaintiff's *prima facie* eligibility, that determination would not involve consideration of Plaintiff's Application for Naturalization.

Accordingly, the Court concludes on this record that § 1429 and *Bellajaro* do not prohibit Defendants from determining Plaintiff's *prima facie* eligibility for naturalization.

**C.    Defendants Have Discretion to Determine Plaintiff's
       *Prima Facie* Eligibility for Naturalization.**

In *Cruz*, the BIA held an alien "may" obtain a recommendation of *prima facie* eligibility for naturalization from what is now the USCIS.  The BIA's use of the word "may" indicates it is within Defendants' discretion to decide an applicant's *prima facie* eligibility for naturalization.

The Court, therefore, concludes Defendants have jurisdiction to determine Plaintiff's *prima facie* eligibility for naturalization when removal proceedings are pending.

## PLAINTIFF'S MOTION FOR ISSUANCE OF WRIT OF MANDAMUS (#18)

Plaintiff moves for an order requiring Defendants to make a decision as to Plaintiff's *prima facie* eligibility for naturalization within thirty days of the Court's issuance of an order in this matter pursuant to the All Writs Act, 28 U.S.C. § 1361.  Defendants did not file a specific response to Plaintiff's Motion.  The Court deems Plaintiff's Motion to be ripe now that the Court has ruled on Defendants' Motion to Dismiss.

## I.   Writ of Mandamus

The Writ of Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes."  *Cheney v. United States Dist. Ct. for the Dist. of Columbia*, 124 S. Ct. 2576, 2586 (2004)(internal quotation omitted).

18 - OPINION AND ORDER

> [T]he Writ is one of the most potent weapons in the
> judicial arsenal, three conditions must be satisfied
> before it may issue.  First, the party seeking issuance
> of the writ must have no other adequate means to attain
> the relief [s]he desires – a condition designed to
> ensure that the writ will not be used as a substitute
> for the regular appeals process.  Second, the
> petitioner must satisfy the burden of showing that
> [her] right to issuance of the writ is clear and
> indisputable.  Third, even if the first two
> prerequisites have been met, the issuing court, in the
> exercise of its discretion, must be satisfied that the
> writ is appropriate under the circumstances.

Id. at 2587 (internal quotations and citations omitted).

"For mandamus relief, three elements must be satisfied:
(1) the plaintiff's claim is clear and certain; (2) the
[defendant official's] duty is ministerial and so plainly
prescribed as to be free from doubt; and (3) no other adequate
remedy is available." *Johnson v. Reilly*, 349 F.3d 1149, 1154
(9th Cir. 2003).  "Whether the elements of the mandamus test are
satisfied is a question of law reviewed de novo.  The trial court
retains discretion in ordering mandamus relief, however, even if
all elements are satisfied." *Indep. Mining Co. v. Babbitt*, 105
F.3d 502, 505 (9th Cir. 1997).

## II.  Analysis

For mandamus relief, Plaintiff must show, among other
things, that "the [defendant official's] duty is ministerial and
so plainly prescribed as to be free from doubt." *Johnson v.
Reilly*, 349 F.3d 1149, 1154 (9th Cir. 2003).

8 C.F.R. § 1239.2(f) provides in pertinent part:

> An immigration judge may terminate removal
> proceedings to permit the alien to proceed to a
> final hearing on a pending application or petition
> for naturalization when the alien has established
> prima facie eligibility for naturalization and the
> matter involves exceptionally appealing or
> humanitarian factors.

In *Cruz*, the BIA concluded an alien "may establish *prima facie* eligibility for naturalization by an affirmative communication from the [INS] . . . that the alien would be eligible for naturalization but for the pendency of the deportation proceedings."  15 I&N Dec. at 237.  The BIA set forth the INS [now the USCIS] responsibilities with respect to a determination of *prima facie* eligibility for naturalization in permissive terms:  *i.e.*, the USCIS may determine a person's *prima facie* eligibility for naturalization, but it is not required to do so.  Under some circumstances, however, the USCIS is required to issue a *prima facie* determination of naturalization.  *See, e.g.,* 8 C.F.R. § 245.8(c) ("Upon completion of the adjustment of status interview for a special immigrant under section 101(a)(27)(K) of the Act, the director shall make a prima facie determination regarding eligibility for naturalization benefits.").  *See also* 8 C.F.R. § 1245.8(c)(same).  Here, however, the USCIS is not obligated under any existing regulation to issue a determination as to a person's *prima facie* eligibility

for naturalization pursuant to § 1239.2(f) when a removal

20 - OPINION AND ORDER

proceeding is pending nor has the BIA or any court found the USCIS has a mandatory duty to make such a determination under those circumstances.  Thus, even though the Court has concluded Defendants have jurisdiction and discretion to determine Plaintiff's *prima facie* eligibility for naturalization in this case, Defendants duty to do so is not ministerial or so plainly prescribed as to be free from doubt.

Accordingly, the Court concludes mandamus does not provide a basis for the Court to compel Defendants to make a determination as to Plaintiff's *prima facie* eligibility for naturalization.


## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion to Supplement the Record (#20), **DENIES** Plaintiff's Motion for Issuance of Writ of Mandamus (#18), **GRANTS in part** Defendants' Motion to Dismiss (#16) to the extent the Court concludes it does not have the authority to declare that Plaintiff is *prima facie* eligible for naturalization, and **DENIES in part** Defendants' Motion to Dismiss to the extent the Court concludes Defendant McNamee has jurisdiction to determine Plaintiff's *prima facie* eligibility for naturalization while removal proceedings are

21 - OPINION AND ORDER

pending.

      IT IS SO ORDERED.

      DATED this 26th day of January, 2007.

                            /s/ Anna J. Brown
                            _____

                            ANNA J. BROWN
                            United States District Judge